ADAMS COUNTY DEPARTMENT OF
SOCIAL SERVICES CHILD SUPPORT
ENFORCEMENT UNIT, Appellee,

v.

Sary HUYNH, Obligor–Appellant.

No. 93CA1312.

Colorado Court of Appeals,
Div. IV.

Aug. 11, 1994.

Rehearing Denied Sept. 15, 1994.

Robert J. Loew, County Atty., Claire Diaz, Asst. County Atty., Christopher Robbins, Asst. County Atty., Commerce City, for appellee.

David H. Miller, Denver, Legal Director of American Civil Liberties Union, Miller & Kreutzer, Julie Kreutzer, Bich Nga Miller, Denver, for obligor-appellant.

Opinion by Judge HUME.

Sary Huynh (obligor) appeals the default judgment entered against him in an administrative child support enforcement action initiated by the Adams County Child Support Enforcement Unit (CSE) pursuant to § 26–13.5–101, et seq., C.R.S. (1993 Cum.Supp.) (Act). We vacate the default judgment and remand the cause for further proceedings.

According to an affidavit filed by obligor, a Cambodian immigrant who speaks and reads virtually no English, he was served with a notice which required him to appear at an administrative negotiation conference to determine whether he had a duty to support a child, R.C. Obligor could not read the documents, but guessed from the mother's name that they were court documents. He called the mother and made arrangements that, if the child was his, he would pay a certain sum of monthly support. Thinking the matter resolved, he did not attend the negotiation conference or request that such conference be delayed.

Obligor's affidavit further asserts that soon thereafter, he received additional documents notifying him that he was required to appear in court on a specified date, which once

again, he took to friends to interpret for him. Following his friends' directions, obligor attempted to appear in district court on the scheduled day, but appeared in the wrong county. He tried to correct his mistake by going to another court in a different and also incorrect county. Since he did not appear at the hearing, the district court entered a default judgment against him, finding him to be the child's father, and ordering him to pay child support.

Subsequently, obligor obtained counsel and moved to set aside the default judgment pursuant to C.R.C.P. 60(b). The trial court denied the motion.

## I.

Obligor first contends that no final judgment has entered against him. We disagree. However, we vacate the judgment and remand the action for further proceedings to determine whether obligor owed a duty of support for R.C., including a determination of the parent-child relationship between obligor and R.C.

### A. Final Judgment

■ C.R.C.P. 58(a) requires that all judgments be in writing, signed, and dated by the trial court in order to be final and appealable. *In re Marriage of Hoffner*, 778 P.2d 702 (Colo.App.1989).

Here, the trial court signed and dated a support order imposing child support obligations upon obligor. Hence, there is a final and appealable order.

### B. Subject Matter Jurisdiction

■ Although a final order exists, we find nothing in the record to indicate that statutory requirements for invoking the trial court's jurisdiction in the administrative proceedings were followed here. Even though the parties did not raise the issue, we may consider, on our own motion, whether the trial court lacked subject matter jurisdiction. *Sullivan v. Board of County Commissioners*, 692 P.2d 1106 (Colo.1984).

■ Subject matter jurisdiction concerns the court's authority to deal with a particular case. It is not enough that the court has, generally, the authority to decide a particular class of case. The court's authority must be properly invoked before it can act. And, a judgment rendered without subject matter jurisdiction is void. *In re Marriage of Stroud*, 631 P.2d 168 (Colo.1981); *see People in Interest of Clinton*, 762 P.2d 1381 (Colo. 1988) (statute required filing of mental health certification to invoke trial court's subject matter jurisdiction).

Here, administrative child support enforcement proceedings are governed by the Act, pursuant to which compliance with the statutory procedural requirements is mandatory.

■ A court's primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To do so, a court looks first to the statutory language, and, if it is clear and unambiguous, the court need not look beyond the plain words of the statute. *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070 (Colo.1992).

■ The CSE relied upon § 26–13.5–105(3), C.R.S. (1993 Cum.Supp.) to obtain a court hearing. However, such a hearing is inapplicable in the procedural context of this case. A court hearing is authorized under that statute only if the parties do not reach a stipulated agreement at the negotiation conference because the obligor contests paternity.

Here, since no negotiation conference was held, the issue of paternity was not contested or properly placed in issue. Therefore, we conclude that § 26–13.5–105(3) has no applicability to the circumstances in this case.

However, the initial notice sent to obligor tracked the provisions of § 26–13.5–106, C.R.S. (1993 Cum.Supp.), which require the CSE to issue an order of default establishing paternity and financial responsibility if the obligor fails to take a blood test, to appear for a negotiation conference, or to reschedule such conference. Thus, that statute and the notice provide for the issuance of a default order by the CSE and limit the district court's authority to approval or disapproval of that administrative action. To obtain court approval of an administrative default, the CSE must provide the court with its

order establishing paternity and financial responsibility, the obligee's verified affidavit regarding paternity, and blood test results, if any. Section 26–13.5–110, C.R.S. (1993 Cum. Supp.).

Here, the district court issued a child support order after obligor failed to appear pursuant to a notice of hearing before the court. However, the record does not contain an administrative default order establishing paternity and financial responsibility, nor does it contain a verified affidavit from the obligee regarding paternity. Hence, there was no compliance with the provisions of §§ 26–13.5–106 and 26–13.5–110.

Apparently, the district court entered its own default judgment pursuant to C.R.C.P. 55. However, the proceedings were statutory, and therefore, C.R.C.P. 55 did not grant the trial court authority to enter a default judgment. Indeed, no court process ever issued in accord with C.R.C.P. 4, nor was any paternity proceeding commenced pursuant to § 19–4–101, et seq., C.R.S. (1993 Cum.Supp.).

Hence, we conclude that the statutory requirements necessary to invoke the district court's jurisdiction over the subject matter of this action were not met. Accordingly, the court's entry of default without proper administrative documentation was improper and the ensuing order cannot stand.

## II.

Obligor next contends that the trial court abused its discretion in denying his C.R.C.P. 60(b)(1) motion to set aside the default judgment. Because we have concluded that the judgment was a nullity, we need not address this contention.

The judgment is vacated, and the cause is remanded for redetermination pursuant to the Act or other appropriate statute. Since obligor entered an appearance to contest his parental relationship and his duty to provide support for R.C. prior to the valid entry of a default, he is entitled to contest those issues.

DAVIDSON and BRIGGS, JJ., concur.