In re the **MARRIAGE OF** Susan
C. **SMITH**, Appellant,

and

**Ronald A. Smith, Appellee.**

No. 95CA0589.

Colorado Court of Appeals,
Div. V.

Oct. 24, 1996.

Alan B. Hendrix, Denver, for Appellant.

Polidori, Gerome, Franklin & Jacobson, LLC, Gary L. Polidori, Barry Seidenfeld, Lakewood, for Appellee.

Opinion by Judge ROY.

In this dissolution of marriage action, Susan C. Smith (wife) appeals from the order denying her C.R.C.P. 60(b) motion to set aside an order reducing child support. We agree that the matter must be reconsidered.

A decree of dissolution of marriage was entered in October 1990 incorporating a separation agreement which provided, *inter alia*, that Ronald A. Smith (husband) would pay $776.03 per month for the support of the parties' two children. Child support was computed in accordance with the statutory guideline and included work-related child care costs incurred by wife. *See* § 14–10–115(10), C.R.S. (1996 Cum.Supp.). The separation agreement further provided that it was modifiable by its own terms, by operation of law, or by written agreement of the parties. Also, it stated that it was to be construed and enforced in accordance with the laws of the state of Colorado and that the court would retain continuing jurisdiction as to all matters contained in the agreement.

Following entry of the decree, husband's counsel withdrew and wife's counsel remained of record. In March 1993, both parties, wife without the benefit of counsel, signed an agreement which stated, with errors, in pertinent part:

An adjustment in article VII [child support] is in order because as of June 1993 as there will be no further child day care costs and wage treatment for both parties have changed. Per the telephone conversation between Susan and Ron on January 22, 1993 the following adjustments will take effect on the first child support payment in June, 1993, June 10, 1993.

The results of the conversation was as follows; There will be 24 payments each in the amount of *$220, per payment.* Effective 1994 there will also be two additional payments in the amount of $220 each. The extra two payments are to be make one payment in April and one payment in June of each year. This would bring the total payments for April and June to three payments, each of $220, payable to Susan through the District Court as in the past. This brings the *yearly amount of child support for both children, Adam and Brian Smith to a total of $5730.* This agreement will remain in effect until another meeting is held and a new agreement can be reached between Susan and Ronald Smith on an annual time frame.

The signing of the amendment and/or agreement relieves both parties of past issues that may or may not have complied with the first courts orders. (Emphasis in original)

Prior to the agreement, child support was $9,312.36 per annum. Following the agreement, child support was $5,280 per annum for the balance of 1993, and $5,720 per annum thereafter, the calculations in the agreement notwithstanding. It is not clear based on this record whether there was any arrearage in child support at the time the child support modification agreement was signed.

On April 6, 1993, the trial court entered its order on the face of the agreement stating: "This stipulation of the parties herein set forth is made an *order* of court nunc pro tunc to 3/12/93." The entry of the order was not recorded on the registry of actions, and there is no indication in the record that it was mailed to or otherwise served upon either party or counsel, both as required by C.R.C.P. 58(a).

In 1995, wife sought to collect child support arrearages with the assistance of the district attorney. The district attorney, upon discovering the order, mailed a copy of the order to wife whereupon she immediately filed a verified motion to set it aside pursuant to C.R.C.P. 60(b)(5).

In her verified motion, wife alleged that the agreement had been entered into under

duress in that husband threatened to terminate the payment of child support altogether if she did not renegotiate it. In addition, she alleged that she was not aware that any order had been entered until she was advised of it by the district attorney in early 1995, and neither she nor her counsel were given notice that the agreement had been filed or the order entered. She further alleged, with support in the record, that the court had entered the 1993 order approving the reduction in child support without the benefit of any current financial affidavits or other financial information, and without a child support worksheet or other computation of child support in accordance with the child support guideline set out in § 14–10–115, C.R.S. (1996 Cum.Supp.).

The trial court, without a hearing and without addressing wife's verified allegations, concluded that wife had not alleged sufficient grounds to justify setting aside the 1993 order modifying child support based on the agreement.

Wife contends that the trial court abused its discretion in denying her C.R.C.P. 60(b)(5) motion to set aside the April 1993 order modifying child support. We agree and conclude that the matter must be reconsidered by the trial court.

## I.

We first address the timeliness of wife's motion under C.R.C.P. 60(b)(5).

■ The order was entered April 6, 1993, and the motion was not filed until February 2, 1995. C.R.C.P. 58(a) requires that the court mail a copy of the order to all parties not present when an order is signed in accordance with C.R.C.P. 5. Wife was, at all times pertinent to this matter, represented by counsel. In her verified motion wife alleges, with support in the record, that she was not provided notice of the order as required by C.R.C.P. 58(a). In addition, she alleges that she had no notice of the order until January 5, 1995.

Under these circumstances, the C.R.C.P. 60(b)(5) motion was filed within a reasonable time. See In re Marriage of Seely, 689 P.2d 1154 (Colo.App.1984).

As another preliminary matter, husband, relying on McNeece v. McNeece, 39 Colo. App. 160, 562 P.2d 767 (1977), asserts that wife cannot argue on appeal the validity of the underlying April 1993 order modifying child support. More specifically, husband maintains that wife cannot argue, inter alia, the lack of notice, the failure of the parties to submit financial information, the failure of the court to review the agreement under the child support guideline, and the retroactive effect of the agreement and order. However, inasmuch as all of these matters were, in fact, alleged in wife's verified motion to set aside the order pursuant to C.R.C.P. 60(b)(5), we reject husband's argument.

## II.

■ The language of C.R.C.P. 60(b)(5) vests power in the trial courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice. Canton Oil Corp. v. District Court, 731 P.2d 687 (Colo.1987). Appellate review of the grant or denial of a C.R.C.P. 60(b) motion is ordinarily limited to determining whether the district court abused its discretion. In re Marriage of Seely, supra.

It is the public policy of Colorado that child support be set in an amount reasonable or necessary to support the child. In determining child support, the court is to consider the financial resources of all the parties, including the child, and the standard of living the child would have enjoyed had the marriage not been dissolved. Section 14–10–115(1), C.R.S. (1987 Repl.Vol. 6B).

In 1986, the General Assembly adopted extensive amendments to the Uniform Dissolution of Marriage Act relating to child support, the principal aspect of which was to establish a guideline, which amounts to a detailed mathematical formula, for determining a presumptive child support order. Section 14–10–115(3), C.R.S. (1987 Repl.Vol. 6B). The statute permits the court, in its discretion, to depart from the guideline if the court finds that the presumptive child support is inequitable, unjust, or inappropriate and the court states the reasons for departure in writing. Section 14–10–115(3)(a), C.R.S.

(1987 Repl.Vol. 6B); *In re Marriage of Marshall,* 781 P.2d 177 (Colo.App.1989).

Agreements or stipulations between the parties are binding on the court except those relating to child custody, support, and parenting time which are subject to approval by the court. Section 14–10–112, C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Miller,* 790 P.2d 890 (Colo.App.1990).

With respect to agreements or stipulations as to child support, § 14–10–115(3)(b)(I), C.R.S. (1987 Repl.Vol. 6B) provides:

> Stipulations presented to the court shall be reviewed by the court for approval. No hearing shall be required; however, the court shall use the guideline to review the adequacy of child support orders negotiated by the parties as well as the financial affidavit which fully discloses the financial status of the parties as required for use of the guideline.

Child support can be amended only upon a showing of changed circumstances that are substantial and continuing. Section 14–10–122(1)(a), C.R.S. (1996 Cum.Supp.). The statute creates a presumption that a calculation of child support in accordance with the guideline, which results in a change of less than 10% in the monthly support order, is not a substantial and continuing change of circumstances.

In this instance, neither party submitted financial information to the trial court at the time it entered the 1993 order modifying child support; neither the trial court nor the parties made a child support computation to assure compliance with the child support guideline; and the trial court gave no reasons for departing from the child support guideline if, in fact, the order departs from the guideline.

It has long been the public policy of this state that provisions of separation agreements relating to property division are binding on the court, are to be reviewed by the court in light of the financial circumstances of the parties, and are to be rejected by the court only if found to be unconscionable. Section 14–10–112(2), C.R.S. (1987 Repl.Vol. 6B). *See In re Marriage of Seely, supra* (lack of financial information and absence of financial review justified setting aside property settlement).

However, it has also long been the policy of this state that provisions of separation agreements relating to child support *are not binding* on the trial court. Section 14–10–112(2). Only relatively recently has the General Assembly both mandated and defined the review of child support agreements by a court.

In light of § 14–10–115(3)(b)(I), we conclude that the failure to submit to the court the financial information necessary to review a child support agreement and the failure of the trial court to conduct such a review renders the resulting order subject to being set aside pursuant to a timely filed C.R.C.P. 60(b)(5) motion. Therefore, contrary to the trial court's conclusion, wife did allege grounds sufficient to warrant the granting of her C.R.C.P. 60(b) motion.

The cause is remanded to the trial court for reconsideration of wife's C.R.C.P. 60(b) motion in light of the views expressed in this opinion. In reconsidering the motion, the trial court may conduct a review of the financial circumstances of the parties at the time of the 1993 order modifying child support as required by law and other pertinent matters raised and argued by the parties.

RULAND and CASEBOLT, JJ., concur.